Ruffin, C. J.
 

 As the appeal is from an interlocutory order, our attention is restricted to it by the act allowing such appeals. We are to consider, then, that this is a proper proceeding in the Court of equity, and our only enquiry is, whether the plaintiff ought to be ruled to security for costs.
 

 It has not been contended at the bar, that, generally speaking, plaintiffs in equity are not to give security for costs ; but it was admitted to be the common course, and it seemed to be yielded that it was proper. The Masters and the Courts have acted, as if the act of 1787, c. 27® embraced as well the Courts of equity as the Courts of law, which last only arc, properly speaking, Courts of record. But it does not seem material, whether Courts of equity are directly within the enactments of that statute, or not; for, if the statute
 
 proprio vigore
 
 does not embrace them, the rule ought to be adopted by the Court of equity, because it is prescribed to the Courts of law. The saihe reason extends to both Courts ; and it is the-course of the Courts of equity to follow the Courts of law in such matters. In England, the rule at law is- to require security for costs from all plaintiffs without the jurisdiction, unless they be abroad temporarily, or involuntarily, as, for example, officers.or privates in the army
 
 *296
 
 or navy, or otherwise in the public service. As a matter of course, the Court of equity adopted precisely the same rule And it is acted on, not as a thing in the discretion of the Court in each case, according to its circumstances; but as a thing of course, according to a settled law of the Court, corresponding with the rule at law, and embracing every person alike, rich and poor.
 
 Beames on Costs,
 
 178. In the same manner,' here the Court of equity has followed the Courts of law, and the practice of requiring security for costs has prevailed so universally as to establish it as a part of the law of that Court, whether it be strictly within the act of 1787 or not. So, indeed, it seems
 
 to
 
 have been regarded by the Legislature itself; for in the act of 1831, c. 46, the Courts of law and equity are expressly placed on the same footing, and are respectively required to give a judgment or decree, on motion, against the surety in the prosecution bond for the defendant’s costs.
 

 But it was supposed, that the present proceeding is not within the acts, because it is not an original suit, but a derivative and dependent proceeding. The answer to that is, that the statute expressly gives costs between the parties to the suits under it; and, as the defendant may thus have a decree for his costs, he is entitled to have them secured. It is true, that upon the face of the answer, the issue of the slave Nancy, whom the father-in-law “ transferred,” as the answer says, to the defendant at his marriage, but not stated to be for value or in writing, remains, apparently, the property of the donor, who is yet living; and, therefore, subject to be declared liable to execution for the plaintiff’s debt. Therefore, supposing the act of 1806 to extend to the Court of Equity, there may be but a remote probability, that the plaintiff would be decreed to pay the costs. Yet as that question, as to the jurisdiction, is yet to be decided, and, indeed, as the plaintiff may, as he has hitherto done, decline making any motion on the defendant’s declaration, we cannot
 
 *297
 
 foresee, that the decision may not be against the plaintiff. Consequently, we think, he ought to have been required to give security, as demanded: which will be certified accordingly to the Court of Equity. The appellant is entitled to his costs in this Court.
 

 Per Curiam.
 

 Decreed accordingly.