suit of the remedy; that, inasmuch as the creditor relied solely upon the agent, and as the subsequently disclosed principal was the real party in interest, the creditor may pursue either or both until he collects from one. "The only effect of the discovery is that principal and agent are both liable; and the seller may, at his election, proceed against either or both." Nason v. Cockroft, 3 Duer, 366. Demurrer is overruled, with costs, with leave to withdraw same and answer over upon payment thereof within 20 days.

Demurrer overruled with costs, with leave to withdraw and answer over upon payment thereof within 20 days.

(37 Misc. Rep. 71.)

PFEIFER v. SUPREME LODGE OF BOHEMIAN BENEVOLENT SLAVO-
NIAN SOC. OF UNITED STATES.

(Supreme Court, Trial Term, New York County. January, 1902.)

1. BENEFIT CERTIFICATE—PAYMENT.

The constitution of a benevolent society provided that on the death of any member his heirs should receive $1,000 from the order. The supreme lodge was composed of delegates elected from the general membership, and was authorized to call on the subordinate lodges to contribute towards the death benefit; they to pay the assessment to a trustee appointed by the subordinate lodges of the society, and he to pay the gross sum to those entitled to benefit. *Held*, that the supreme lodge did not discharge itself of liability to the heirs of a member by paying his death benefit to such trustee, he being the agent of the subordinate lodge, and not the agent of the heirs.

2. SAME—RIGHT TO BENEFIT.

The constitution of a benevolent society required one desiring to be entitled to a death benefit to apply for it, and procure a certificate from the supreme lodge showing that he was so entitled. *Held*, that a member who has not complied with these requirements bars his heirs from the death benefit, and the fact that after his death the subordinate lodge notifies the supreme lodge that he is so entitled does not affect the rights of his heirs.

Action by Mary Pfeifer against the Supreme Lodge of the Bohemian Benevolent Slavonian Society of the United States. Judgment for defendant.

Paul Jones, for plaintiff.
Michael Schaap and Edward Hymes, for defendant.

BISCHOFF, J. According to the admitted allegations of the complaint, the defendant is an incorporated benevolent society, composed of a number of grand lodges and subordinate lodges, located throughout the United States, and from the constitution and by-laws of the society it is apparent that this collection of lodges constitutes the "order"; this word, as employed in the constitution and by-laws, being descriptive of the society as a whole. Under the scheme of association, initial membership is obtained by enrollment as a member of a subordinate lodge, and the membership carries with it certain rights to benefits in case of sickness or death.

Hynek Opitz, the plaintiff's intestate, died a member in good standing of a subordinate lodge, and to this action, brought to

recover the stated death benefit of $1,000, one of the defenses is that the defendant has performed its agreement by payment of the sum in suit to one Joseph Hlavac, a "trustee" designated in certain notices of death sent by the subordinate lodge to the "supreme lodge." The contract obligation to pay this sum is to be looked for in the constitution and by-laws, and the promise on the part of the defendant corporation is found in article 7 of the constitution (division B, § 1), in the following form: "Every member who has become entitled to the death benefit * * * is entitled, in case of his death, to the receipt by his heirs of $1,000 from this order,"— the "order," as above noted, being the defendant. The affairs of the defendant, according to its plan of organization, are supervised by a body or committee composed of delegates elected from the membership generally, and styled the "supreme lodge." The by-laws of this supreme lodge (article 4) provide for the means of collection of death benefits, it being made the duty of this body, when apprised of the death of a member, to call upon all the subordinate lodges to contribute their stated portion of the benefit, and these lodges are then required to pay the amount thus assessed to a "trustee" designated in the notices, the "trustee" being charged with the duty of paying the gross sum to those entitled to the benefit, through the subordinate lodge of which the deceased was a member. This "trustee" appears to be selected by the subordinate lodge, or by all the lodges of any one state, and "for the accurate transmission of all amounts from the state trustee to the proper place * * * the said lodges are responsible." It is quite clear that the corporation, under these regulations, does not fulfill its contract with the member by the mere payment of the fund to the designated trustee. Nothing in the constitution and by-laws makes this "trustee" the agent of the assured, and he is actually the appointed agent of the subordinate lodges, which for the purposes of these benefits are local agencies of the corporation itself. These local agencies are made "responsible" for the trustee's proper dealing with the money (Sup. Lodge By-Laws, art. 4, § 3); but, without some clear intimation that this intends a responsibility to the member, the provisions are to be construed as relating to the lodge's responsibility to the corporation, since the whole article deals with the relation of the lodges to the superior committee. Reasonably interpreted in favor of the assured, this provision for responsibility upon the part of the lodges cannot alter the agreement of the corporation to pay the benefit to the member. A scheme of collection by its agents for the corporation itself is involved, and nothing more. I conclude, therefore, that payment to the "trustee" is no defense to the action. The intimation in the case of Pfeifer v. Supreme Lodge, 54 App. Div. 200, 66 N. Y. Supp. 604, that the defendant had performed its duty by causing the fund to reach the hands of the "trustee," does not bear upon the matter for decision in the present action. In the case cited the papers before the court were in such form as to make it appear that the defendant sued as the "supreme lodge" was the governing committee so named, not the "order" itself, and the duties of that "supreme lodge"

were, of course, performed in causing the sum in suit to be collected.

I think, however, that the action must fail upon the admitted facts, for the reason that the contract to pay the death benefit was made dependent upon the designation of a beneficiary by the member, and no designation was ever made by the intestate. This is not a case where there was an agreement to pay the fund to some one, in any event, upon the death of the insured, as in Bishop v. Grand Lodge, 112 N. Y. 627, 20 N. E. 562, and Wokal v. Belsky, 53 App. Div. 167, 65 N. Y. Supp. 815. Here the contract to pay is found in the defendant's constitution, division "b" of article 6, and reads:

"Section 1. Every member who has become entitled to the death benefit in accordance with the provisions and rules of this division and who complies with their requirements, is entitled in case of his death to the receipt by his heirs of $1,000 from this order."

Section 4 of this division provides that "every one who desires to become entitled to these benefits" must make written application stating "to whom the death benefit shall be paid in case of his death," and this application is then made the basis of a certificate attested by the supreme lodge to the effect that "the said member is entitled to the death benefit," without which certificate "no member shall be considered entitled to this benefit." Section 6 permits the change of a beneficiary by taking out a new certificate upon payment of a fee, and section 8 provides as follows:

"To members of the order who are members entitled to the death benefit before the adoption * * * of this article, the supreme lodge shall without exception issue certificates without expense. To that end all applications, with the name of the heir, must be made within 60 days after this constitution goes into effect."

Under these provisions, it is perfectly clear that the issuance of the certificate was a condition to the member's eligibility for benefits, and that it was to the "heirs" of a member thus entitled to benefits that a payment was due. Evidently the word "heirs" was understood to mean the persons designated as such in the application, but, taking the word in its legal sense, no payment was to be made to this class until the member had complied with the condition of obtaining a certificate that he was entitled to death benefits. The contract limits the obligation to pay to any one, of whatever class, to cases where a certificate has first been obtained, and the case falls directly within the principles applied in Hellenberg v. District No. 1, 94 N. Y. 580.

The statement made by the subordinate lodge to the supreme lodge, after the intestate's death, that he was entitled to death benefits, cannot, of course, have any effect upon the question of the defendant's liability, nor alter the admitted fact that the intestate left no certificate designating any person as beneficiary. The intestate was a member before the constitution referred to went into effect, but the action is based upon the contract evidenced by this constitution, and by no other paper, and he clearly came within the general provisions requiring "every one" who desired benefits to apply for the certificate. Section 8, above quoted, permitted old

members, entitled to benefits, to obtain the certificate without expense, provided they applied within 60 days; but there is no suggestion that old members were to be prohibited from applying afterwards, like other members, and therefore it cannot be held that the defendant had waived any conditions by accepting dues from the intestate after the expiration of the 60 days. There must be judgment for the defendant for the dismissal of the complaint, with costs.

Judgment for defendant, dismissing complaint, with costs.